*This opinion is subject to revision before final publication in the Pacific Reporter*
**2023 UT 5**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Respondent,*

*v.*

SHANE PATRICK SAMORA,
*Petitioner.*

No. 20210347
Heard: October 3, 2022
Filed April 27, 2023

On Certiorari to the Utah Court of Appeals

Third District, Salt Lake
The Honorable Linda M. Jones
No. 171906629

Attorneys:

Sean D. Reyes, Att'y Gen., Christopher D. Ballard, Asst. Solic. Gen.,
Richard J. Pehrson, William M. Hains, Asst. Solic. Gen.,
Salt Lake City, for respondent

Herschel Bullen, Salt Lake City, for petitioner

JUSTICE HAGEN authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT, ASSOCIATE CHIEF JUSTICE PEARCE,
JUSTICE PETERSEN, and JUSTICE POHLMAN joined.

JUSTICE HAGEN, opinion of the Court:

### INTRODUCTION

¶1 A jury convicted Shane Patrick Samora of aggravated robbery for holding up a convenience store at knifepoint. On appeal of his conviction, Samora moved the court of appeals for remand under rule 23B of the Utah Rules of Appellate Procedure, alleging his trial counsel was ineffective by not supporting his mistaken identity defense with evidence that Samora had prominent tattoos on his

hands at the time of trial that were not visible in surveillance images of the robber.

¶2 The court of appeals denied Samora's rule 23B motion. It explained that, even accepting as true that Samora had tattoos on his hands at the time of trial, that fact was not probative of the robber's identity unless trial counsel could prove that Samora had the tattoos on the night of the robbery. Samora did not allege or support his motion with evidence that he had the tattoos at the relevant time; he instead tried to submit a new affidavit with his reply brief after the State pointed out this deficiency. The court of appeals refused to consider the new affidavit because rule 23B requires that the motion include all facts necessary to establish an ineffective assistance of counsel claim. Because Samora's motion alleged only that he had the tattoos at the time of trial, the court of appeals concluded that it was not unreasonable for trial counsel not to bring that fact to the jury's attention and that, even if counsel had done so, there was no reasonable probability of a different outcome at trial.

¶3 We granted Samora's petition for certiorari to address whether the court of appeals erred by denying the rule 23B motion. We conclude that the court of appeals correctly interpreted rule 23B to require that all facts necessary to support a claim of ineffective assistance of counsel must be alleged in the motion itself and its supporting affidavits. A defendant who fails to make that showing cannot cure that deficiency by alleging new facts and filing additional affidavits in reply. Because Samora's rule 23B motion did not allege sufficient nonspeculative facts, which, if true, would establish an ineffective assistance of counsel claim, we affirm the court of appeals' decision.

## BACKGROUND[1]

¶4 Just after 9:45 p.m. in June of 2017, a man entered a gas station convenience store and attempted to rob it at knifepoint. The store clerk resisted, threatened to call the police, and demanded that the robber leave the store. The robber gave up and left the store on foot.

¶5 The clerk called 911 and followed the robber out of the store. The clerk remained on the line with the 911 operator as he trailed the robber through the neighborhood to an apartment building. The

_____

[1] "On appeal, we review the record facts in a light most favorable to the jury's verdict and recite the facts accordingly." *State v. Gallegos*, 2020 UT 19, ¶ 2 n.1, 463 P.3d 641 (cleaned up).

clerk watched the robber enter the building while he described what he was seeing in real time and provided the address to the 911 operator.

¶6 The clerk returned to the store where he was met by a responding officer. The clerk provided the officer with six screenshots from the store's video surveillance footage of the robbery. The screenshots show a masked man entering the store, approaching the counter, and pointing a knife at the clerk. While the mask covers the bottom half of the man's face, his brow line, hairline, clothing, and shoes are fully visible. The man had dark eyebrows, closely cropped dark hair, and a distinctive horseshoe-shaped receding hairline. He was wearing long dark basketball shorts and a dark hooded sweatshirt over a long white t-shirt. He was also wearing white athletic shoes conspicuously laced in a unique crisscross pattern.

¶7 Meanwhile, other officers had arrived at the apartment building just minutes after the clerk's 911 call. The officers saw Samora standing in a doorway wearing a white t-shirt, long black basketball shorts, and white athletic shoes laced in a distinctive crisscross pattern. Upon seeing the officers, Samora went inside and shut the door. The officers approached the doorway and discovered that it led to an apartment that belonged to Samora and his wife. Samora was placed under arrest and photographed.

¶8 After obtaining a search warrant for the apartment, the officers located a dark hooded sweatshirt on a hook next to the entryway. A knife like the one used in the robbery was found in a drawer containing items that made the knife appear to be out of place.

¶9 Following his arrest, Samora placed a jailhouse phone call to his wife. During the call, Samora told his wife that he did not actually take anything. His wife replied, "Well, then they're—right now they're charging you with aggravated robbery, which they need to lower it to attempted if you didn't steal—if you didn't take anything." Samora reminded his wife, "These phones are recorded. . . . I ain't admitting to nothing. I'm just hypothetically saying . . . You already told me that the guy from the store followed me home. . . . Where was he? Over by where the police parked?" In a later phone call with his wife, Samora acknowledged that the clerk must have been "real close to see me turn into the apartment."

¶10 The State charged Samora with aggravated robbery, a first-degree felony. The primary issue at trial was the identity of the robber. To prove that Samora was the robber, the State offered

testimony from the clerk, who described what the robber was wearing and how the clerk followed the robber to what turned out to be Samora's apartment. The State also introduced a series of photographs designed to show the similarities between the robber's appearance and Samora's clothing, hairline, and shoes. Finally, the State played clips of the jailhouse phone calls between Samora and his wife. The jury convicted Samora of aggravated robbery and the court later sentenced him to prison.

¶11 Samora appealed, arguing, among other things, that his trial counsel rendered ineffective assistance by failing to elicit evidence from the arresting officers that Samora had prominent tattoos on his hands that were not visible in the store surveillance images of the robber. Samora moved under rule 23B of the Utah Rules of Appellate Procedure for a remand to supplement the record with facts concerning his trial counsel's alleged ineffective assistance.

¶12 Samora supported the motion with two affidavits and several photographs of his hand tattoos. An affidavit from an investigator stated that the photographs were taken at the Utah State Prison in September of 2019, more than two years after the robbery. In a separate affidavit, Samora's trial counsel averred that she noticed that Samora had visible tattoos on the tops of both hands during the August 2018 trial, which took place more than a year after the robbery. Because those tattoos were not visible in screenshots of the robber, trial counsel said she had intended to point out that discrepancy at trial. Specifically, she had intended to question each of the arresting officers about Samora's tattoos and to argue mistaken identity because no tattoos were visible in the surveillance images, but she forgot to do so.

¶13 In opposition to Samora's rule 23B motion, the State argued that, even accepting the facts alleged in the affidavits as true, it proved only that Samora had the hand tattoos at the time of trial, not at the time of the robbery. Unless trial counsel could prove Samora had the hand tattoos on the night of the robbery, competent counsel could reasonably conclude that the presence of the tattoos at trial would have little probative value. Because Samora's motion did not allege that trial counsel had evidence that the tattoos were present at the relevant time, the State argued that Samora had not alleged nonspeculative facts which, if true, would establish that his counsel was ineffective.

¶14 With his reply, Samora provided an affidavit from his wife, averring that he obtained the tattoos shortly before they were married, which was well before the night of the robbery.

¶15 The court of appeals denied the motion, concluding that Samora failed to satisfy the requirements of rule 23B. *State v. Samora*, 2021 UT App 29, ¶¶ 50-56, 484 P.3d 1206. The court recognized that rule 23B requires the movant to allege nonspeculative facts not already in the record that would support an ineffective assistance claim. Importantly, the movant must provide supporting evidence of those facts with the motion. *Id.* ¶ 50. The fact that Samora had tattoos on his hands was probative only if he had them on the day of the robbery. *Id.* ¶ 53. But the supporting affidavits submitted with Samora's motion asserted only that he had tattoos on his hands at the time of trial, which occurred more than a year after the robbery. *Id.* He did not allege or provide supporting evidence that he had hand tattoos on the day of the robbery until he filed his reply brief. *Id.* ¶ 54. The court concluded that proffering a new fact with an entirely new affidavit in a reply brief violated the rule, and therefore, the court was precluded from considering the affidavit from Samora's wife. *Id.* ¶¶ 54–57.

¶16 We granted Samora's petition for certiorari.

## ISSUE AND STANDARD OF REVIEW

¶17 The issue before us is whether the court of appeals erred in denying Samora's rule 23B motion. On a writ of certiorari, we review the court of appeals' decision on a rule 23B motion for "correctness, ceding no deference to the court of appeals." *State v. Gallegos*, 2020 UT 19, ¶ 31, 463 P.3d 641 (cleaned up).

## ANALYSIS

¶18 Samora contends that the court of appeals erred when it denied his rule 23B motion. Rule 23B "provides a mechanism for criminal defendants to supplement the record with facts that are necessary for a finding of ineffective assistance of counsel but which do not appear in the record." *State v. Gallegos*, 2020 UT 19, ¶ 38, 463 P.3d 641 (cleaned up). The rule permits a remand "to the trial court for entry of findings of fact, necessary for the appellate court's determination of a claim of ineffective assistance of counsel." UTAH R. APP. P. 23B(a).

¶19 Defendants seeking to develop an ineffective assistance of counsel claim through a rule 23B motion face a high bar. Remand is "available only upon a nonspeculative allegation of facts, not fully appearing in the record on appeal, which, if true, could support a determination that counsel was ineffective." *Id.*; *see also State v. Griffin*, 2015 UT 18, ¶¶ 17–19, 441 P.3d 1166. Rule 23B is not an invitation to "fish for facts," and "[t]he mere hope that an individual may be able to provide information if subpoenaed to testify is not

sufficient." *Gallegos*, 2020 UT 19, ¶ 40 (cleaned up) (quoting *Griffin*, 2015 UT 18, ¶ 19). Instead, the movant must specifically allege what evidence will be presented on remand to prove the movant's ineffective assistance of counsel claim, and the motion must be accompanied by affidavits supporting such allegations. UTAH R. APP. P. 23B(b). Those allegations, if true, must support both prongs of an ineffective assistance of counsel claim. *Id.; see also Gallegos*, 2020 UT 19, ¶¶ 39–40. If the movant cannot "meet the test for ineffective assistance of counsel, even if [the] new factual allegations were true, there is no reason to remand the case." *Griffin*, 2015 UT 18, ¶ 20.

¶20 Here, even accepting his factual allegations as true, Samora cannot show that his trial counsel was constitutionally ineffective. An ineffective assistance of counsel claim requires a defendant to show both that (1) trial counsel's performance was deficient, and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Trial counsel's performance is deficient only if the alleged "conduct fell below an objective standard of reasonableness under prevailing professional norms." *State v. Ring*, 2018 UT 19, ¶ 35, 424 P.3d 845 (cleaned up). The defense is prejudiced if there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Griffin*, 2015 UT 18, ¶ 15 (cleaned up).

¶21 "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address [a defendant's] claims under either prong." *Honie v. State*, 2014 UT 19, ¶ 31, 342 P.3d 182. And "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice," we will do so. *Strickland*, 466 U.S. at 697. We take that route here.

¶22 To establish prejudice, it is not enough for a defendant to "show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Instead, the defendant has the burden of showing that "the decision reached would reasonably likely have been different absent [trial counsel's alleged] errors." *Gallegos*, 2020 UT 19, ¶ 33 (cleaned up). This is a counterfactual analysis—we contemplate "what would have happened but for the ineffective assistance." *Ross v. State*, 2019 UT 48, ¶ 76, 448 P.3d 1203. In making this determination, "we consider the totality of the evidence, taking into account such factors as whether the errors affect the entire evidentiary picture or have an isolated effect and how strongly the verdict is supported by the record." *Griffin*, 2015 UT 18, ¶ 21 (cleaned up).

¶23 Samora's rule 23B motion and supporting affidavits allege that trial counsel performed deficiently in two ways: first, by failing "to question each of the officers present at the arrest of Mr. Samora regarding the tattoos," and second, by failing to "mention in closing argument the fact that the suspect's hands shown in the photographs at the time of the robbery bore no tattoos on them." As to the first claim, Samora's motion failed to allege any nonspeculative facts which, if true, would establish that counsel's failure to pursue this line of questioning was prejudicial. *See* UTAH R. APP. P. 23B(a). Specifically, Samora has not shown what testimony would have been elicited from the arresting officers. For instance, Samora has not produced an affidavit from one of the officers or from a defense investigator stating that, if asked, an arresting officer would confirm that Samora had hand tattoos at the time of his arrest. Nor has he submitted any police reports noting the presence of such tattoos. As a result, we can only speculate as to what the jury would have heard if trial counsel had questioned the arresting officers about the tattoos. Rule 23B does not permit remand as a mechanism to discover how the officers would testify. *See Gallegos*, 2020 UT 19, ¶ 48 n.9. Because Samora has not alleged nonspeculative facts about the evidence counsel would have been able to elicit, he has not shown that the alleged deficiency had any prejudicial effect on the outcome.

¶24 Samora's second ineffective assistance claim, based on trial counsel's closing argument, suffers from the same infirmity—he has not demonstrated that trial counsel could have elicited relevant evidence on which to comment during closing argument. Because we do not know from the rule 23B motion and corresponding affidavits whether the officers could confirm that Samora had tattoos on the backs of his hands at the time of his arrest, it would have done little good for trial counsel to point out that the robber had no visible tattoos in the surveillance images. Because the absence of visible tattoos in the surveillance video lacked relevance unless Samora first established that he had the tattoos at the time of the robbery, he has not demonstrated that mentioning the tattoos in closing argument would have had a reasonable likelihood of affecting the verdict. This is especially true given the strong, overwhelming evidence connecting Samora to the robbery.

¶25 Samora attempted to cure this deficiency by attaching an affidavit to his reply brief in which his wife averred that he had obtained the tattoos before the robbery. But rule 23B provides that supporting affidavits must be filed with the motion. UTAH R. APP. P. 23B(b). In setting out the content of a rule 23B motion, the rule states that "[t]he motion must include or be accompanied by affidavits or

declarations alleging facts not fully appearing in the record on appeal that show the claimed deficient performance of the attorney" and those "affidavits or declarations must also allege facts that show the claimed prejudice suffered by the appellant as a result of the claimed deficient performance." *Id.* Although a movant is permitted to file a reply "to answer new matters raised in the response," *id.* 23(c), a reply brief cannot be used to cure a deficiency in the initial filing. *Cf. State v. Kruger*, 2000 UT 60, ¶¶ 20-21, 6 P.3d 1116 (holding that the State's observation that the appellant had not raised a particular issue "did not constitute a 'new matter' entitling [the appellant] to brief the issue in his reply"). Because Samora did not file his wife's affidavit with his rule 23B motion as required by the rule, the court of appeals properly disregarded the affidavit.[2]

¶26 But even if the wife's affidavit had been filed with the rule 23B motion, the affidavit does not allege nonspeculative facts that would establish that the claimed deficient performance prejudiced Samora. In his rule 23B motion, Samora did not allege that trial counsel performed deficiently by not calling his wife to testify. Rather, the alleged deficient performance was counsel's failure to question the arresting officers about the tattoos. Because Samora has produced no evidence to show that the officers would have offered favorable testimony, Samora cannot show a reasonable probability of a different result if trial counsel had acted in the manner Samora preferred.

## CONCLUSION

¶27 A movant is not entitled to cure a deficient rule 23B motion by alleging new nonspeculative facts in a reply. Because Samora's rule 23B motion did not allege that the arresting officers would provide favorable testimony, Samora failed to offer nonspeculative facts that, if true, would have established that he was prejudiced by his counsel's failure to question the officers about his tattoos or comment on that evidence in closing argument. Accordingly, we affirm the court of appeals' denial of Samora's rule 23B motion.

---

[2] We offer no opinion on whether our rules permit the appellate court to grant a motion to supplement or amend a rule 23B motion. Because that did not occur here, we have no occasion to decide that question.