**2026 UT App 40**

# THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
STEVEN WALLACE HART,
Appellant.

Opinion
No. 20240525-CA
Filed March 19, 2026

Fourth District Court, American Fork Department
The Honorable Roger W. Griffin
No. 161100020

Freyja Johnson, Emily Adams, and Mikayla Irvin,
Attorneys for Appellant

Derek E. Brown and Joshua J. Prince,
Attorneys for Appellee

JUDGE AMY J. OLIVER authored this Opinion, in which
JUDGES DAVID N. MORTENSEN and RYAN D. TENNEY concurred.

OLIVER, Judge:

¶1      Steven Wallace Hart was convicted of two counts of dealing in material harmful to a minor. Following his convictions, his trial counsel (Counsel[1]) moved to arrest judgment, claiming the statute of limitations had run on the two counts. The district court denied the motion. Hart argues on appeal that Counsel's failure to move for dismissal earlier constituted ineffective assistance. We disagree and affirm his convictions.

---

1. Although Hart was represented by two attorneys at trial, we refer to them singularly as "Counsel" for simplicity.

## BACKGROUND[2]

*Disclosure of the Abuse*

¶2 Hart's daughter Amanda[3] grew up in Utah County, living with her mother (Mother) and two older brothers. For approximately eight years, Amanda's oldest brother's girlfriend and their daughter (Lily[4]) also lived at the house. Although Hart owned the house, he did not live there full time. Hart worked in Minnesota and sporadically visited the family in Utah. When Hart visited the Utah house, he slept in either the office or the living room.

¶3 In the fall of 2015, when Lily was seven years old, she disclosed to her mother (brother's girlfriend) that Hart, her grandfather, had sexually abused her.[5] Following this disclosure, her mother reported the abuse to the police, and she also informed the rest of Hart's family, including Amanda, Mother, and Amanda's other brother. Shortly thereafter, Amanda, who was approximately seventeen years old at that time, disclosed to Mother that Hart had sexually abused her, too. Amanda subsequently reported the abuse to the police.

---

2. "On appeal, we recite the facts from the record in the light most favorable to the jury's verdict and present conflicting evidence only as necessary to understand issues raised on appeal." *State v. Huey*, 2022 UT App 94, n.2, 516 P.3d 345 (cleaned up).

3. A pseudonym.

4. A pseudonym. Lily used they/them pronouns at the time of trial. For the sake of clarity, we use the pronouns she used at the time of the abuse. We intend no disrespect by doing so.

5. These allegations were the subject of a separate criminal case.

¶4    The State initially charged Hart with five counts for his abuse of Amanda: rape of a child, a first-degree felony (Count I); two counts of sodomy upon a child, first-degree felonies (Counts II and III); aggravated sexual abuse of a child, a first-degree felony (Count IV); and dealing in material harmful to a minor, a third-degree felony (Count V).

*The Trial*

¶5    At trial, Amanda testified about multiple incidents of alleged abuse that occurred when she was between the ages of four and eleven years old. She recounted two incidents where she walked in on Hart masturbating in the office while watching pornography. In one incident, she recalled him watching pornography that involved a woman having sex with multiple men, and in the other, the pornography depicted a man masturbating. During both incidents, Hart invited her into the room and continued watching the pornography and masturbating until he ejaculated. Amanda also recalled an incident when she was about eight years old where Hart "laid [her] on the floor" of the office. She was wearing "a blue tank top with a light green trim" and "a blue ruffled skirt." Hart took her "skirt off," "bunched up" her shirt, and "rub[bed] his penis against [her] vagina" until he ejaculated on her stomach.

¶6    Next, Amanda testified about an incident where Hart "had [her] put [her] mouth on his penis." He was sitting in his chair in the office with her standing next to him. He instructed her to "'[s]uck it like a lollipop,'" but she was confused and "took his penis out of [her] mouth." She testified that when Hart tried to have her do this again, she "refused." Finally, Amanda testified about an incident of "attempted anal penetration." She testified that when Hart laid her on the floor in the office, ee was "on his knees between [her] legs, and he was rubbing his penis on [her] vagina." At one point he moved his penis to her anus. She then felt "a little bit of pressure" but "no penetration." Hart then

returned to rubbing his penis against her vagina until he ejaculated on her stomach.

¶7 The State called Lily to testify about Hart sexually abusing her numerous times when she was between five and seven years old.[6] She testified that Hart touched her vagina with his hands, had her "stroke his penis" with her hand, and "put his penis in [her] mouth" until he ejaculated. The State played the video recording of her 2015 interview at the Children's Justice Center when she was seven years old.

¶8 The State called a number of other witnesses at trial who testified about the reports of abuse by Amanda and Lily and about the criminal investigations. The State also introduced a written statement that Hart gave to the police in which he denied the abuse but admitted to "look[ing] [at] porn and masturbat[ing], generally late at night when [he] believe[d] no one [was] going to catch [him]." He admitted that Mother and possibly his oldest son's girlfriend had caught him masturbating because he would be in the living room when he did so. He also admitted that he "spanked [and] yelled at" Lily, and she saw him pee once. Finally, he admitted that Amanda saw him naked on one occasion "when [he] walked out of the shower into the master bedroom."

¶9 Following the close of evidence but before closing arguments, the State moved to amend Count IV from aggravated sexual abuse of a child to a second count of dealing in material harmful to a minor. Counsel told the district court she did not object to the amendment. The jury was presented with five counts for deliberation: rape of a child, two counts of sodomy upon a child, and two counts of dealing in material harmful to a minor.

---

6. The testimony was admitted under rule 404(c)(1) of the Utah Rules of Evidence, which permits admission of "evidence that the defendant committed any other acts of child molestation to prove a propensity to commit the crime charged."

The jury acquitted Hart of rape of a child and both counts of sodomy upon a child but convicted him of both counts of dealing in material harmful to a minor. The court sentenced him to eighteen months of probation with a suspended prison sentence.

*The Posttrial Motion*

¶10   Following the convictions, Counsel moved to arrest judgment, arguing she failed to realize the statute of limitations had run for the counts of dealing in material harmful to a minor. She claimed the failure to raise the statute of limitations argument previously was an oversight and not a strategic decision. The State opposed this motion, arguing the defense was waived because it was not timely raised and any arguments would be more properly made on appeal. The court denied Hart's motion, citing *State v. Jackson*, 2011 UT App 318, 263 P.3d 540, which held that "[a] criminal statute of limitations is an affirmative defense that can be forfeited if not raised before or during trial." *Id.* ¶ 35.

ISSUE AND STANDARD OF REVIEW

¶11   Hart argues Counsel rendered ineffective assistance by not raising the statute of limitations before or during trial. "When a claim of ineffective assistance of counsel is raised for the first time on appeal, there is no lower court ruling to review and we must decide whether the defendant was deprived of the effective assistance of counsel as a matter of law." *State v. Miller*, 2023 UT App 85, ¶ 22, 535 P.3d 390 (cleaned up).

ANALYSIS

I. Ineffective Assistance of Counsel

¶12   A defendant asserting ineffective assistance of counsel must demonstrate that "counsel's performance was deficient"

and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). "Because failure to establish either prong of the test is fatal to an ineffective assistance of counsel claim, we are free to address a defendant's claims under either prong." *State v. Samora*, 2023 UT 5, ¶ 21, 529 P.3d 330 (cleaned up). We elect to dispose of Hart's claim based on his failure to demonstrate deficient performance.

¶13　For performance to be considered deficient, counsel's representation must have fallen "below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Our analysis is "highly deferential" and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" that "might be considered sound trial strategy." *Id.* at 689 (cleaned up). "Given the strong presumption of competence, we need not come to a conclusion that counsel, in fact, had a specific strategy in mind. Instead, we need only articulate some plausible strategic explanation for counsel's behavior." *Jackson v. State*, 2015 UT App 217, ¶ 16, 359 P.3d 659 (cleaned up).

¶14　Hart argues Counsel's actions were deficient because Counsel "did not [forgo] raising the statute of limitations defense based on 'a sound trial strategy.'"[7] He cites Counsel's motion to arrest judgment wherein Counsel attributed the failure to move to dismiss the two charges earlier to "not catch[ing] the . . . argument prior to this case going before a jury." "However, even where an omission is inadvertent and not due to a purposeful strategy, relief is not automatic. Instead, the ultimate question is

---

7. The State contests whether the statute of limitations had, in fact, run due to Hart living in Minnesota. *See* Utah Code § 76-1-304(1) ("The period of limitation does not run against any defendant during any period of time in which the defendant is out of the state following the commission of an offense."). For purposes of our analysis, we assume, without deciding, that it had expired.

always whether, considering all the circumstances, counsel's acts or omissions were objectively unreasonable." *State v. Medina*, 2025 UT App 99, ¶ 54, 574 P.3d 1011 (cleaned up), *cert. denied*, 578 P.3d 749 (Utah 2025). Further, "just because counsel thinks he [or she] made a mistake does not mean that his [or her] action was objectively unreasonable." *Id.* ¶ 59 (cleaned up). Therefore, we must examine the failure to raise the statute of limitations defense from an objective standard of reasonability.

¶15 Hart argues there was no strategic advantage to forgoing the statute of limitations argument at trial because he was convicted only on the two lesser charges of dealing in material harmful to a minor. The State counters there was a strategic advantage because if the counts for dealing in material harmful to a minor had been successfully dismissed, "the jury would have been left with the all-or-nothing option of (1) convicting Hart . . . of up to four charged first-degree felonies or (2) acquittal." We agree with the State.

¶16 In *State v. Jackson*, 2011 UT App 318, 263 P.3d 540, our court addressed this very issue, explaining,

> [W]here some charges are time-barred and some are not, . . . it is appropriate to consider whether the defendant obtained a tactical advantage by failing to raise the limitations defense at trial. If the evidence is strong and the risk of conviction on a greater offense with higher penalties is likely, the defendant might consciously refrain from asserting a statute of limitations defense to a charge with lesser penalties. If the jury has no other option, conviction of the greater charge may be almost certain. By allowing the lesser charge to go to the jury despite the fact that the statute of limitations has expired, the defendant may receive the benefit of a conviction on a lesser crime.

*Id.* ¶ 32 (cleaned up).

¶17 Here, Hart originally faced potential conviction on multiple first-degree felonies (rape of a child, two counts of sodomy upon a child, and aggravated sexual abuse of a child) and one third-degree felony (dealing in material harmful to a minor). Once the State amended Count IV, Hart still faced possible conviction on three first-degree felonies (rape of a child and two counts of sodomy upon a child). We conclude Counsel could have reasonably believed that the evidence presented by the State was strong enough that the "risk of conviction" on at least one of the first-degree-felony charges was likely. *Id.*

¶18 For example, Hart faced a risk of conviction on two first-degree felony charges for sodomy upon a child. The jury was instructed it could convict Hart of sodomy upon a child if it found each of the following elements beyond a reasonable doubt:

> 1. That . . . Hart;
>
> 2. Intentionally, knowingly, or recklessly,
>
> 3. Committed a sexual act with [Amanda], involving any touching, however slight, of the genitals of one person and the mouth or anus of another, even if accomplished through the clothing; and
>
> 4. [Amanda] was under 14 years old at the time of the conduct.

¶19 Amanda testified about two such incidents. She described an incident of "attempted anal penetration" where Hart had been "rubbing his penis on [her] vagina" and then moved his penis to her anus. She testified that she felt "a little bit of pressure" but "no penetration." Amanda also testified about an incident when Hart "put his penis in [her] mouth and . . . said, 'Suck it like a lollipop.'" She recalled specific details of each of these two incidents,

including where in the house they occurred and the respective physical positions of her and Hart.

¶20 Hart also faced the risk of conviction on the original Count IV, aggravated sexual abuse of a child.[8] To convict, the jury would have been instructed that it needed to find the following elements beyond a reasonable doubt:

1. That . . . Hart;

2. Intentionally, knowingly, or recklessly,

3. Touched the genitalia of [Amanda]; and,

4. Did so with the intent to:

   A. Cause substantial emotional or bodily pain to any person, OR

   B. Arouse or gratify the sexual desire of any person, regardless of the sex of any participant; and

5. [Amanda] was under 14 years old at the time of the conduct.

¶21 The jury heard testimony from Amanda that during the incident where he had "attempted anal penetration," he rubbed his penis against her vagina until he ejaculated on her stomach.

---

8. Under Hart's theory of ineffective assistance, Counsel should have moved to dismiss the harmful dealing charge (Count V), before or during trial. Had Counsel done so, the State would presumably not have amended Count IV at the close of the evidence to a charge of harmful dealing. Therefore, we also consider Hart's risk of conviction on the original aggravated sexual abuse of a child charge.

Amanda was able to recall this incident with specificity and detail, including what she was wearing and where the incident occurred.

¶22    The jury also heard testimony from Lily, who was fifteen years old at the time of trial. She testified about the details of multiple incidents of sexual abuse that Hart perpetrated against her in the office when she was between five and seven years old, similar to Amanda.

¶23    Finally, the jury had Hart's written statement to police in which he admitted to viewing pornography and masturbating in public areas of the house. He acknowledged that both Amanda and Lily had seen his penis, though in his statement he explained the incidents occurred in seemingly innocuous ways. He also admitted to having "spanked [and] yelled at" Lily.

¶24    Had the harmful dealing charges been dismissed, the jury would have been left with "an all-or-nothing choice" to either convict Hart of first-degree felonies or acquit him entirely. This approach "may increase the risk that the jury will convict to avoid setting the defendant free." *Jackson v. State*, 2015 UT App 217, ¶ 18, 359 P.3d 659 (cleaned up). Counsel could have reasonably concluded the evidence presented was strong enough to create the risk of a likely conviction on one of the first-degree felony charges and, therefore, could have reasonably chosen to permit the time-barred harmful dealing charges to be given to the jury to allow for an alternative, more favorable outcome for Hart.

¶25    The potential sentences Hart faced support this conclusion as well. Hart was convicted of the two third-degree felony harmful dealing charges and received only eighteen months of probation with a suspended prison sentence. Conviction on either sodomy charge would have carried a minimum prison sentence of twenty-five years, and conviction for aggravated sexual abuse would have carried a minimum prison sentence of fifteen years. Faced with this reality, Counsel reasonably could have "consciously refrain[ed] from asserting a statute-of-limitations

defense to a charge with lesser penalties [because] the evidence [wa]s strong and the risk of conviction on a greater offense with higher penalties [wa]s likely." *Id.*

¶26 Accordingly, we conclude Counsel's failure to raise the statute of limitations defense against the harmful dealing charges was objectively reasonable and was, therefore, not deficient performance. Hart has thus not demonstrated that he received ineffective assistance.

CONCLUSION

¶27 Because Counsel could reasonably believe that Hart's risk of conviction on first-degree felony charges with high mandatory prison sentences was likely, we cannot conclude it was deficient performance for Counsel to have allowed the jury to consider the two time-barred third-degree felony charges. We affirm Hart's convictions.

───────────